## In re MUSCARA.

District Court, W. D. Pennsylvania. February, 1927.

### No. 11024.

**1. Bankruptcy ⚖➙407(9)—False statement to commercial agency is presumed to have been with intention to deceive, and if credit is obtained thereby is a bar to discharge.**

A materially false statement made to a commercial agency requested as a basis for credit, is presumed to have been intended to deceive, and if deception results and property is thereby obtained on credit, is a bar to discharge.

**2. Bankruptcy ⚖➙407(11)—Obtaining credit on false statement bars discharge, though creditor also made other inquiries.**

The effect of a false statement on which bankrupt obtained credit, as a bar to discharge, is not changed by the fact that the creditor also made other inquiries.

**3. Bankruptcy ⚖➙413(8)—Seasonable objection to specifications is required.**

Formal insufficiency of objection to discharge should be seasonably called to attention of court.

**4. Bankruptcy ⚖➙413(6)—Objection to discharge may be amended.**

Formal insufficiency of objection to discharge may be remedied by amendment.

In Bankruptcy. In the matter of Sam Muscara, individually and doing business as the Australian Woolen Mills, bankrupt. On exceptions to report of special master, recommending discharge. Exceptions sustained, and discharge denied.

Charles J. Margiotti and W. M. Gillespie, both of Punxsutawney, Pa., for bankrupt.

Stonecipher & Ralston, of Pittsburgh, Pa., for objecting creditor.

SCHOONMAKER, District Judge. This case was heard on exceptions to report of special master, to whom was referred the specifications of objections to the discharge of bankrupt, for the purpose of taking testimony with reference thereto, and making report thereof to the court, together with the special master's findings of fact and his recommendations in favor of or against the discharge. The referee reported recommending the dismissal of these specifications of objections and the granting of the discharge.

To this report objecting creditors filed six exceptions: (1) Error on part of master in not finding as a fact that bankrupt had destroyed or concealed books; (2) error on part of master in not finding as a fact that bankrupt had issued a materially false statement with intent to deceive and defraud; (3) error on the part of the referee in finding that the bankrupt did not conceal assets; (4) error in recommending that discharge be granted; (5) error in not recommending refusal of discharge; and (6) error in recommending that costs be paid by exceptants.

As to the first and third exceptions, which relate exclusively to findings of fact by the master with reference to the destroying or concealing of books and the concealing of assets, we are of the opinion that these findings of the master are fully supported by the evidence, and therefore we should not disturb them.

[1] As to the second exception relating to the false statement, the special master was of the opinion that the objection to the discharge of the bankrupt failed, because the evidence tends to negative an "intention to deceive," and because the special master could not find as fact that credit was extended by reason of a reliance upon the statement. The special master did not expressly find whether the statement was true or false. In our opinion the evidence clearly establishes that the statement was false, and we cannot agree with the special master in his conclusion that the evidence negatives "an intention to deceive," and that there was no evidence that credit was extended by reason of a reliance upon the statement. In fact, we believe that the exact opposite is the only correct and proper deduction to be made from the evidence.

The bankrupt was informed by the representative of R. G. Dun & Co. that he wanted a statement for credit purposes. In response to

that request the bankrupt gave a false statement. There could be no other conclusion than that the bankrupt intended to deceive in the false statement which he gave. Judge Rellstab, in Re Perlmutter (D. C. N. J.) 43 Am. Bankr. Rep. 362, 256 F. 862, we think, correctly states the rule applicable to the present situation, as follows: "A rational being is presumed to intend the natural and probable consequences of his words and conduct, and Joseph Perlmutter in issuing the statement is presumed to have intended the effect it produced upon the title company. The latter had a right to assume that the statement was true, and, as it parted with its money on the strength of the statement, the person responsible for the untruth, in the absence of proof showing the contrary, will be presumed to have intended to hide from the lender the firm's true financial condition."

The fact that the statement was given to a reporting agency does not change the situation. Judge Woolley has made that clear in Haimowich v. Mandel (C. C. A. 3d Cir.) 39 Am. Bankr. Rep. 513, 243 F. 338, where he says: "But in the case under consideration the bankrupt gave the mercantile agency a false statement for distribution among the trade for the purpose of obtaining credit, and though not given upon the specific request of a subscriber, it was subsequently communicated to a subscriber upon his request, with the result that it induced the extension of credit intended. The amendment of 1910 [Comp. St. § 9598], which bars a discharge when a false statement has been made to the 'representative' of the person from whom property has been obtained on credit, does not prescribe that the statement to the representative must be made upon the specific request of the person extending the credit. It simply enlarges the number and character of persons to whom the making of a false statement operates as a bar to a discharge. The test, therefore, is whether the agency to which the false statement was made was in fact the representative of the person who, receiving the statement, extended credit. From the very nature of its occupation, a mercantile agency is the representative or agent of its subscribers in the business of obtaining for them credit ratings of persons with whom they propose to have dealings, and when a false statement is made to such representative and is communicated to the subscriber with the result that the subscriber, relying upon it, sells property and extends credit to one who becomes bankrupt, then the situation contemplated by the provision arises. If the amendment of 1910 did not thus enlarge the provision, then it did not change the law from what the courts had interpreted it to be before the addition of the word 'representative.'"

[2] We cannot see, either, from the evidence, why the special master did not find as a fact that the creditor relied on this false statement in furnishing credit. The evidence discloses that, although the creditor's representative, Hill, inquired of other people as to bankrupt's credit standing, his main reliance was on the statement of R. G. Dun & Co. The fact that the creditor may inquire of some one else does not change the situation. He may rely on two sources of information at once. In re Applebaum (C. C. A. 2d Cir.) 7 Am. Bankr. Rep. (N. S.) 732, 11 F.(2d) 685. We conclude, therefore, that the second specification of objections to bankrupt's discharge was sufficient.

[3, 4] Some objection was made before the master as to the form of this specification of objection to discharge, which he disregarded by reason of the fact that an amended specification had been filed in court. He was right in so doing. Formal insufficiency of the specification should be seasonably called to the attention of the court, so that amendments might be made if necessary. This disposition of the second specification of error necessarily involves the sustaining of the fourth, fifth, and sixth specifications of error, and they are therefore sustained.

An order may be submitted denying the bankrupt's application for discharge.