## In re HOLZMAN.

## In re BROOKLYN NAT. BANK OF NEW YORK.

### No. 191.

Circuit Court of Appeals, Second Circuit.

March 12, 1934.

Meyer Kraushaar, of New York City, for appellant.

Silberman & Steinfeld, of Brooklyn, N. Y. (Isidore M. Silberman, of Brooklyn, N. Y., of counsel; Herman Gross, of Brooklyn, N. Y., on the brief), for bankrupt-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The bankrupt is a physician in Brooklyn, N. Y., who filed his voluntary petition in bankruptcy September 17, 1931, and was adjudicated a bankrupt the same day. He was indebted to the Brooklyn National Bank of New York to the amount of $43,000, which was secured by collateral deposited with the bank having a value of $27,000. The bank had applied a credit balance on the bankrupt's checking account in the sum of $1,800 to the debt, and had moved for summary judgment in a suit it had brought against the bankrupt in the state court on April 7, 1931. On May 4, 1931, the bankrupt executed a chattel mortgage on his automobile to Charles Cohen for $850. His schedule of debts showed as secured creditors only the Brooklyn National Bank of New York and Cohen and one unsecured creditor, the Brooklyn Trust Company. His petition showed that he had no papers or books relating to his business.

After the bankrupt filed his petition for discharge, the Brooklyn National Bank of New York objected and filed eight specifications. The referee found in favor of the bankrupt as to all of them and recommended a discharge. The District Judge followed the recommendations of the trustee, and the objecting creditor appealed. These specifications were based on a claimed failure to keep books of account showing his financial status; on a claimed destruction of records from which his financial condition might have been ascertained; on the mortgage to Cohen as a transfer of property to hinder, delay, and defraud his creditors; on claimed false statements in his petition and false testimony before the referee relating to this mortgage; on claimed transfers of money to his wife to defraud his creditors; on a claimed false statement of his financial condition given to

the Brooklyn Trust Company, to obtain credit; on failure to schedule accounts receivable in his petition; and on concealment of accounts receivable. At the hearing before the referee, it appeared that the bankrupt had been earning about $13,000 a year in the practice of his profession. It had been his custom to make on cards entries showing what he had done and later to set down his charges, transfer the accounts to a small book, and destroy the cards. Even this much was somewhat neglected after the above-mentioned suit was brought against him. However, as another matter compels a reversal, we need not disturb the action below in respect to books of account. While some of the other matters of objection appear to be supported to the extent that reasonable cause to believe them true was shown and the burden of proving that he had not committed any of such acts was cast upon the bankrupt in accordance with the provisions of the amendment of May 27, 1926 (section 6), to section 14 of the Bankruptcy Act (11 USCA § 32), it is now unnecessary to review the evidence in that regard. It is enough for present purposes to point out that, in so far as the referee held that the burden was upon the objecting creditor to show more than reasonable grounds to believe that the bankrupt had committed an act which would bar his discharge before it became necessary for the bankrupt to prove the contrary, the decision went on an erroneous principle.

The specification based on the financial statement given the Brooklyn Trust Company must be sustained. The statement was in writing and was signed by the bankrupt and his wife. It appears to have been a joint statement, although it was headed as a statement of assets and liabilities of the bankrupt. It was given January 21, 1931, and was in express terms for the " * * * purpose of procuring credit or loans and/or extension of existing credit or loans and/or any other accommodations or benefits which may be requested direct or otherwise from time to time. * " * " It showed a net worth of $53,596 and the largest liability of the bankrupt—his debt to the objecting creditor—was not mentioned. Likewise the collateral security held by this creditor was omitted. The statement was false beyond question. We need not dwell upon the necessity for explanation from the bankrupt. That is all too apparent. The decisive fact remains that under the amendment of 1926 the bankrupt had the burden of showing that notwithstanding this false statement given as already

stated he had not "obtained money or property on credit upon a materially false statement in writing made by him to any person or his representative for the purpose of obtaining credit from such person," and he utterly failed to do so.

Decree reversed, with directions to enter a decree denying a discharge.