### In re MONSCH.
### No. 3270.

District Court, E. D. Kentucky.
April 13, 1937.

Leroy J. Sendelback, of Newport, Ky., for bankrupt.

John L. Cushing, of Covington, Ky., for Personal Finance Co.

FORD, District Judge.

The bankrupt's petition for discharge is opposed by the Personal Finance Company, a creditor. The ground specified is that the bankrupt obtained a loan from the objecting creditor by making a materially false statement in writing respecting his financial condition. Bankruptcy Act, § 14b (3), as amended, 11 U.S.C.A. § 32 (b) (3).

The case was referred to the referee as special master. He has duly reported the proof taken before him together with his

recommendation that the objection be over-ruled and the discharge be granted. Exceptions to the report have been filed by the objecting creditor. The testimony shows, without contradiction, that, at the time the bankrupt applied for the loan made to him by the objecting creditor, a written financial statement was required of him disclosing, among other things, his total indebtedness in order to enable the finance company to determine his eligibility for the credit sought. It is further shown, without contradiction, that the written financial statement, which the bankrupt then signed and to which he made oath, was materially false in respect to the amount of his indebtedness and that the bankrupt well knew it was false when he signed and swore to it. The only conflict in the testimony is with reference to the circumstances under which the statement was made.

In regard to the circumstances under which the financial statement was given, the bankrupt testifies as follows:

"A. I went in there to make a loan for $300.00 from the Personal Finance Company; he got the application out and asked me what I owed. I told him everything I owed, I told him I owed the Ohio Finance Company, Morris Plan Bank, I told him I owed Dine Furniture Company, told him I owed charge accounts; I told him I owed back rent. He said to me at the time he did not know whether that would go through or not, but between me and him he may fix it somehow. That is the reason he has only got the Ohio Finance and Morris Plan on there. * * *

"Q. Did anything occur the day that the actual loan was made, any conversation between you and Mr. Puttman regarding this loan? A. Regarding the loan, he said I owed too much then.

"Q. What was done in regard to this after he told you there was too much owing at the time you made application for the loan, did he refuse the loan? A. He said: 'I will let you know, if I can fix it some way you would be all right.'

"Q. What was your reaction, what did you think he meant 'he would fix it up some way'? A. He was not going to list the creditors, that is the only way I could get the loan."

The wife of the bankrupt testifies as follows:

"A. He told me when I went in his office when payments got so hard I could hardly meet them, he knew at the time he made the loan to my husband he could not make it because he was in too much debt and he should not have granted him the loan in the first place, that is the absolute God's truth."

Mr. Puttman, the operator of the finance company, with whom the negotiations were had, testifies, that no such conversations took place as those testified to by the bankrupt and his wife.

The referee does not resolve this conflict in the testimony by a finding of facts. He merely finds that, under this testimony, "There is doubt of the bankrupt's fraudulent intent here."

As a result of the doubt thus arising from the conflict in the testimony, the referee bases his recommendation upon his conclusions as to the law of the case, which are set out in his report as follows:

"If the statement in the application was intentionally untrue, it is then necessary to determine if it was made with a fraudulent intent; this must be clearly established by the evidence and the burden of such proof is upon the objecting creditor.

"Even though the statement was made with the knowledge of its falsity, fraudulent intent cannot be presumed; this statement would not of itself imply fraudulent intent; that must be proven by the objecting creditor.

"Fraudulent intent under the Bankruptcy Act is somewhat in the nature of a criminal offense, and it likewise carries with it the same burden and degree of proof as is required in a similar criminal offense, any doubt being construed in favor of the bankrupt."

Having this view of the law of the case, the referee concluded "the objecting creditor has failed to establish by sufficient evidence its objection to the bankrupt's right to discharge."

■ Apparently the referee in reaching this conclusion relied upon decisions which were made before the amendment of May 27, 1926, to section 14b of the Bankruptcy Act. By that amendment (44 Stat. 663), the following provision was added to section 14b: "Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, un-

der this paragraph (b), would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

In Third National Bank v. Schatten, 81 F.(2d) 538, 540 (C.C.A.6), it is said: "The effect of the amendment was to place the burden upon the bankrupt of proving that he had not committed an act which would prevent his discharge, once the objector had shown reasonable grounds for believing that he had."

In Gilbert's Collier on Bankruptcy (4th Ed. 1937, § 493, p. 329) the rule under the amendment of 1926 is stated as follows: "As a general principle the burden of proof is upon the objecting creditor to establish the cause which he claims bars a discharge, yet, when such creditor shows that a materially false statement was known to be untrue when it was made, the burden of proof shifts to the bankrupt to show that it was not made with intent to deceive." To the same effect are the following recent cases: In re Lessler, 74 F.(2d) 249 (C.C.A.2); In re Holzman, 69 F.(2d) 828 (C.C.A.2); In re Miller (D.C.) 5 F.Supp. 913; In re Beckman (D.C.) 6 F.Supp. 957; In re Slohm (D.C.) 10 F.Supp. 351, and In re Hochberg (D.C.) 17 F.Supp. 916.

I am of the opinion that the recommendation of the referee is based upon an erroneous conclusion as to the law of the case.

The essentials of the statutory bar are: (1) That the written statement was made for the purpose of obtaining credit; (2) that it was materially false; and (3) that the credit was obtained upon it. In re Brownstone (D.C.) 17 F.Supp. 402, 406; Gerdes v. Lustgarten, 266 U.S. 321, 45 S. Ct. 107, 69 L.Ed. 309, and Morimura, Arai & Co. v. Taback, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586. It is not essential that, in extending credit, sole reliance be placed upon the false statement, but partial reliance thereon, in good faith, is sufficient. In re Hochberg, supra; Mullen v. First National Bank, 57 F.(2d) 711 (C.C.A.10); In re Muscara (D.C.) 18 F.(2d) 606; In re Applebaum, 11 F.(2d) 685 (C.C.A.2).

The admitted facts, above referred to, are sufficient to make out a prima facie case on behalf of the objecting creditor, and, in the absence of anything to the contrary, intent to deceive, on the part of the bankrupt, not being susceptible of direct proof, would be regarded as established by reasonable and necessary inference from such facts. The burden of showing, by a preponderance of evidence, countervailing or explanatory facts and circumstances sufficient to contravene the inference of intent to deceive, clearly rests upon the bankrupt.

To permit bankrupts, who admit the commission of acts forbidden by section 14 of the Bankruptcy Act, as amended, 11 U. S.C.A. § 32, to shield themselves from the penalties imposed, by merely interposing their own assertions of honest motives and innocent intent, uncorroborated by additional evidence, clear and convincing in character, would result in affording an easy method of frustrating the purposes of the law. One who, by his own admission, swore to a statement, which he knew to be materially false, would naturally be suspected of having the same slight regard for truth when the occasion demands of him a plausible explanation.

Since in matters of this kind, findings of the referee are only advisory, the failure of the referee to make a specific finding, upon the matter referred to, does not preclude the determination of the question by the court, in the exercise of an independent judgment, under the testimony in the record. Bankruptcy Act, § 14b, as amended, 11 U.S.C.A. § 32 (b); International Harvester Co. v. Carlson (C.C.A.) 217 F. 736.

A careful examination of the testimony leads to the conclusion that the bankrupt has failed to sustain the burden of proof resting upon him.

The exceptions filed to the recommendation of the Referee must be sustained and the bankrupt's petition for discharge must be denied.

Let an order be entered in accordance herewith.