### In re FARRELL.
### No. 37173.

District Court, E. D. New York.
Nov. 15, 1939.

I. Arthur Rosenberg, of New York City, for bankrupt.

Szold & Brandwen, of New York City, for objecting creditor, Amalgamated Bank of New York.

BYERS, District Judge.

The bankrupt seeks to set aside the order of the referee denying his application for discharge.

The specification of objection which was sustained by the referee is as follows:

"On or about the 3rd day of June, 1937, the bankrupt for the purpose of obtaining money upon credit from The Amalgamated Bank of New York made a statement, in writing, which was materially false in that the said written statement did not set forth that the bankrupt was a borrower on a loan at the Morris Plan Industrial Bank of New York at said time. That by virtue of the said written statement, the said bankrupt obtained a loan of $300.00 from The Amalgamated Bank of New York, the claimant herein."

It appears from the testimony that there was such a loan so procured, and that the bankrupt failed to state, in making written application therefor, that in the month of April, 1927, he was similarly a borrower from the Morris Plan Industrial Bank to the extent of $197.00.

The precise question was:

Q. Are you a borrower or endorser on any other note? A. Yes.

Q. To whom? A. To Amalgamated Bank.

There can be no doubt that the foregoing statement was false, in that the bankrupt was already a co-maker on a note to the Morris Plan Bank which was almost two-thirds as large as the one upon which he was co-maker in this transaction.

The referee states in his report:

"I do not think that there was an intentionally or fraudulently withholding of the name of the Morris Plan in answer to the question referred to in the financial statement. However, I think that is entirely foreign to the part of the law governing responsibility for false financial statements, i. e., that any person is responsible certainly under Section 14 of the Bankruptcy Act [11 U.S.C.A. § 32] for any statement that is not true, made over their signature, whether they intend to mislead or not, if that statement is material and is relied upon by the lender, and there is a consideration for it, good, bad or indifferent intention on the part of the borrower cannot be taken into consideration."

Within the test suggested in the case of In re Lessler, 2 Cir., 74 F.2d 249, at page

251, which represented the individual views of the writing Judge, it would seem that in this case "there are reasonable grounds for believing that a false statement in writing was intentionally made about a 'matter which, if disclosed, would have caused the party who was to act upon the statement to withhold the credit which he extended.'"

The fact that a proposed borrower is already indebted to another institution in a sum which is almost two-thirds of his present application might well be regarded as a circumstance which would cause the institution to which the application was addressed, to refuse the desired loan.

So much for the question of materiality.

■ As to whether it was made with intent to deceive, the referee has expressed his opinion as quoted.

In this Circuit, it was declared in the case of In re Holzman, 2 Cir., 69 F.2d 828, at page 829, that under such a state of facts, the burden shifts to the bankrupt to show that the complained of misrepresentation was not made with intent to deceive, and it is that aspect of the referee's report which presents the difficult question in this case.

The bankrupt related that he had been a party to a number of similar loans on previous occasions, and he must therefore be deemed to have been familiar with the process, and the requirements attending the negotiation of such loans; a reading of the testimony suggests the applicability of the following; which appears in the opinion in Re Monsch, D.C., 18 F.Supp. 913, 915:

"The admitted facts, above referred to, are sufficient to make out a prima facie case on behalf of the objecting creditor, and, in the absence of anything to the contrary, intent to deceive, on the part of the bankrupt, not being susceptible of direct proof, would be regarded as established by reasonable and necessary inference from such facts. The burden of showing, by a preponderance of evidence, countervailing or explanatory facts and circumstances sufficient to contravene the inference of intent to deceive, clearly rests upon the bankrupt.

"To permit bankrupts, who admit the commission of acts forbidden by section 14 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 32, to shield themselves from the penalties imposed, by merely interposing their own assertions of honest motives and innocent intent, uncorroborated by additional evidence, clear and convincing in character, would result in affording an easy method of frustrating the purposes of the law. One who, by his own admission, swore to a statement, which he knew to be materially false, would naturally be suspected of having the same slight regard for truth when the occasion demands of him a plausible explanation.

"Since in matters of this kind, findings of the referee are only advisory, the failure of the referee to make a specific finding, upon the matter referred to, does not preclude the determination of the question by the court, in the exercise of an independent judgment, under the testimony in the record. Bankruptcy Act, § 14b, as amended, 11 U.S.C.A. § 32(b); International Harvester Co. v. Carlson (C.C.A.) 217 F. 736.

"A careful examination of the testimony leads to the conclusion that the bankrupt has failed to sustain the burden of proof resting upon him."

Similar reasoning, when applied to the facts in this record, leads to the conclusion that the order of the referee was right and must be affirmed.

Settle order.