In re STINE.

No. 10979.

District Court, E. D. Missouri, E. D.

May 17, 1945.

Tom R. R. Ely, Jr., of St. Louis, Mo., for bankrupt.

Dunbar & Biggs, of St. Louis, Mo., for objector.

HULEN, District Judge.

This case is now before the Court on petition of bankrupt for review of findings of fact and conclusions of law and order of the Referee, denying bankrupt's discharge.

The discharge of the bankrupt was denied on petition of the Tower Grove Bank and Trust Company, a creditor, on the ground that on October 20, 1943, the bankrupt had obtained money on credit from the Trust Company "upon a materially false statement in writing," made by the bankrupt for the purpose of obtaining credit. The objections of the petitioner were sustained by the Referee and discharge of the bankrupt was denied. 11 U.S.C.A. § 32.

On October 20, 1943, the bankrupt applied to the Trust Company for a loan in the sum of $375. He was given an application and financial statement to fill out on a blank furnished by the Trust Company. The bankrupt took the financial statement home, filled it out, returned it to the Trust Company, and upon the application and statement so made, the loan to the bankrupt was made.

In answer to the question on the financial statement as to real estate owned by the bankrupt, he listed property having a value of $7,500, subject to a mortgage of $3,000, the title to which was in the name of "A. M. Stine." The bankrupt listed but one creditor, Bayne Construction Company, $475, for labor and material. The real estate listed in the financial statement was not in the name of "A. M. Stine," but was in the joint names of bankrupt and his wife, Rose Stine.

Debtor's voluntary petition in bankruptcy was filed April 12, 1944. It listed unsecured creditors in the total sum of $11,819. The Referee found that the failure of the bankrupt to include his wife's name as owner of the real estate in filling in the financial statement was not done with intention to mislead the Trust Company, and that the Trust Company did not rely upon the statement in making the loan to the bankrupt, but that the bankrupt did omit from his financial statement certain indebtedness and that the financial statement so made by the bankrupt was knowingly false and did induce the Tower Grove Trust Company to extend credit.

We have read the record in this case, and we are unable to conclude that the findings of the Referee are erroneous and unless such be the case, findings should be sustained. In re Garmann et al., D.C., 18 F.2d 155. The record in this case not only sustains the findings of the Referee that the bankrupt omitted from the financial statement presented to the Trust Company a statement of the indebtedness owed by him to Wayne County, Michigan, but we think the record would sustain the finding that the bankrupt omitted to list certain other items of indebtedness owed by him on October 20, 1943.

The objector introduced the financial statement signed by the bankrupt and the schedules which were signed by the bankrupt and are admissible against him. In re Margolis, D.C., 23 F.Supp. 735. These schedules, filed April 12, 1944, list twenty-four creditors (Schedule A-3) as holding unsecured claims totaling "fifteen thousand nine hundred forty-three dollars." None of these claims were listed in the financial statement given to the Trust Company by the bankrupt. Under the heading, "When

and Where contracted," appears either "October, 1943," or "1943" or a date prior thereto, as to nineteen of the claims.

On this record made by the objector, reasonable grounds were shown for believing that the bankrupt had obtained the credit through materially false statements in writing respecting his financial condition, and the bankrupt, on the issue of good faith to secure his discharge, had the burden of explaining the false entries. In re Frumkin, 2 Cir., 82 F.2d 290, and Berley v. Fiol, 2 Cir., 124 F.2d 676. By the undisputed evidence that the credit was extended on the basis of the false statement made by the bankrupt, In re Graham, D.C., 22 F. Supp. 233, a prima facie case was made by the objector. In re Farrell, D.C., 30 F. Supp. 88.

The only explanation which the bankrupt had to offer why he had not included the claims of Wayne County, Michigan, in the financial statement was that he believed the claims barred by the Michigan six year statute of limitations. As the claims appear in the schedule, even the six year statute of limitations could not have been a bar to some of them. The bankrupt's testimony in this respect was not corroborated. The Referee apparently did not believe him, and in view of the contradictory nature of his testimony, this conclusion on the part of the Referee is not surprising. The Referee need not accept the uncorroborated testimony of the bankrupt. Dixwell v. Scott & Co., 1 Cir., 115 F. 2d 873.

If the findings of the Referee confine the false representations on the financial statement solely to bankrupt's obligations to Wayne County, Michigan, then we are not in accord with his conclusions. We are not prepared to accept the bankrupt's explanation of failure to list other claims of creditors in the financial statement given to the Trust Company. Referring to the claim of "Famous-Barr" and "Union May Stern" appearing in the schedule, counsel for the bankrupt asked the bankrupt, "And you did have credit at Famous-Barr, did you?" Answer, "That is right." "You had credit at Union May Stern, didn't you?" "That is right." We are unable to tell from this line of questioning if counsel and the bankrupt were taking the position that because the bankrupt "had credit" at the two stores named, he was not thereby obliged to list the amount of his obligation to

them at the time he made the statement to the Trust Company. Referring to the claim of Stix, Baer & Fuller, the bankrupt was even more indefinite. He stated during his examination as to the time of contracting the obligation, with reference to the statement made to the Trust Company—"I believe that was afterwards." Asked the question, "Well, the dates are reflected on your schedules, aren't they?" the bankrupt answered, "That is right." Later in the testimony of the bankrupt this question was asked and the following answer given—

"So that the great bulk of these accounts were contracted after you made that statement with the exception of the ones in Michigan?"

"That is right."

Just what is meant by "great bulk" does not appear. Most of the accounts representing claims listed in the schedule were from business institutions located in St. Louis, and the bankrupt could easily have verified the exact date on which the indebtedness was created and its status at the time he made the financial statement to the Trust Company. We conclude, therefore, that there was evidence justifying the finding that the bankrupt knowingly made material false statements to induce the Trust Company to extend credit to him, in addition to the matter of the obligation of the bankrupt to Wayne County, Michigan.

Neither are we in accord with the Referee in his conclusion that the statement of the bankrupt regarding ownership of the real estate listed by him was not done with intention on the part of the bankrupt to mislead the bank. Judging from the nature of the claims listed in the schedule, the bankrupt was not a novice in the field of credit and the basis upon which it is extended. The bankrupt had owned and been a party to the transfer of real estate. The financial statement was made out by the bankrupt in the seclusion of his own home. It contained the statement in bold type, "Unless stated above to the contrary, all real estate and stocks and bonds are carried in the name of the undersigned alone." The bankrupt deliberately filled in his own name in answer to the question as to the name in which title to the real estate was carried. The bankrupt must be held to have intended the natural and necessary consequences of his act. In re Weisberger, D.C., 41 F.2d 275. One who lends

money is presumed to be affected by the financial status of the borrower as revealed by his own statement. In re Gregor, D.C., 50 F.Supp. 918.

The Trust Company's officer in charge of credits testified that on the strength of the financial statement, the money was loaned. True the officer said he expected to be paid by the bankrupt out of his salary, and did not expect to have to foreclose on real estate listed, nevertheless we fail to find any basis in the record for the conclusion that the money was not loaned to the bankrupt on the strength of his statement as a whole. The loaning officer was pressed on the attention given by him to the statement, particularly to the representation regarding ownership of the residence. He refused to say that he did not pay any attention to it. Question, "You mean you noticed particularly that he owned it?" Answer, "Yes." Later, on the same subject, on the cross-examination, he was asked, "As a matter of fact, you didn't think about it a whole lot, did you?" Answer, "I don't agree with you." "You wouldn't have loaned the money on just the house would you?" "Not on that alone, no. We took the other things in the statement into consideration."

■ It is our opinion that the representation as to ownership of the real estate being false, and in our opinion intentionally so, and having contributed to the granting of the loan, such false representation was additional grounds for refusing discharge to the bankrupt, Berley v. Fiol, supra, along with the failure of the bankrupt to list the other claims on which he was obligated, even though he testified that the "great bulk of these accounts" were contracted after the financial statement was executed. In re Graham, supra; In re Gregor, supra.

We believe that the representations made by the bankrupt in the financial statement given to the Trust Company come within the ruling of the case of Third Nat. Bank v. Schatten, 6 Cir., 81 F.2d 538, 540:

" 'The false statement in writing which is enough to deny a discharge implies a statement knowingly false, or made recklessly, without an honest belief in its truth, and with a purpose to mislead or deceive.'

"In Franklin v. Monning Dry Goods Co., 5 Cir., 217 F. 929, 932, it was said that the word 'false' as used in section 14b (3) of the Bankruptcy Act means false in the sense of being 'intentionally untrue.'

"In Aller-Wilmes Jewelry Co. v. Osborn, 8 Cir., 231 F. 907, it was held that a statement, to be materially false, so as to justify the denial of a discharge to a bankrupt under section 14b (3), must not only be false in fact, but must have been with the intention to deceive."

■ Discharge in bankruptcy is a privilege which a bankrupt is not entitled to unless he deserves it. A discharge is intended to relieve misfortune, but it must be misfortune coupled with absolute honesty. In re Merritt, 9 Cir., 28 F.2d 679. The fact that this Court is in agreement with the Referee on the one ground on which the discharge was denied calls for affirmance of the order of the Referee, even though there were additional grounds upon which the discharge could properly have been denied. Dixwell v. Scott, supra.