In re Arnold Jay NORTON, Jr., and Linda Ann Norton, Debtors.

RUTLAND SAVINGS BANK, Plaintiff,

v.

Arnold Jay NORTON, Jr., and Linda Ann Norton, Defendants.

Bankruptcy No. 79–00193.
Adv. Proceeding No. 79–0006.

United States Bankruptcy Court,
D. Vermont.

July 22, 1980.

**142**

E. Patrick Burke, Rutland, Vt. of Ryan, Smith & Carbine, Ltd., Rutland, Vt., for plaintiff.

Cranston H. Howe, Fair Haven, Vt., for debtors Arnold J. Norton, Jr. and Linda Ann Norton.

## FINDINGS OF FACT, MEMORANDUM AND CONCLUSIONS

CHARLES J. MARRO, Bankruptcy Judge.

This is an adversary proceeding to determine dischargeability of debt. It is predicated on § 523(a)(2) under which a discharge does not discharge an individual debtor from any debt—

"for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;"

This matter came on for hearing on the Plaintiff's Complaint, and a general denial.

From the testimony adduced at the hearing, the exhibits admitted and the records of the case, the following Findings of Fact are made and Conclusions reached:

### FINDINGS OF FACT

The Debtors filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on November 1, 1979.

For several years prior to that time the Debtors had conducted business with the Ludlow Branch bank of the Plaintiff and had negotiated at least three loans.

On October 25, 1978, the Debtors did make a written application for a loan in the sum of $2,000.00, part of which required them to list ALL their debts and liabilities and other claims against them for the purpose of inducing the Plaintiff to grant the loan. In this application, the Debtors did in fact list four creditors, one of which was the Plaintiff, with an aggregate indebtedness of $1,555.89. American Finance was also listed as one of the creditors but the amount owed was indicated by "?".

The Debtors failed to list in this written application to the Plaintiff an indebtedness of $1,800.00 to Avco; $150.00 to the Vermont National Bank under a Visa card; $50.00 to Thurber T.V.; $700.00 to Rutland Hospital; $400.00 to Village Motors and $2,000.00 for rent to Robert Plunkett, all of these obligations having been incurred by the debtors prior to date of the October 28, 1978 application for the loan.

As a result of the written application and statement of outstanding obligations the Debtors did obtain a loan of $2,000.00 from the Plaintiff evidenced by a promissory note dated October 30, 1978 in the total sum of $2,331.36, which included interest and other charges and was payable in 24 monthly installments of $97.14 each beginning November 30, 1978.

On April 6, 1979, the Debtors made application to borrow from the Plaintiff the sum of $4,800.00 for the purchase of a 1978 Mercury and, in connection therewith, submitted a written financial statement signed by them and showing total liabilities of $4,957.00. This statement recited, "Include all charge accounts, installment contracts, credit cards, rent, mortgages, etc. for which you contractually liable". It failed to disclose outstanding obligations of $1,800.00 to Avco; $150.00 to Visa; $575.00 to Avis-Monier; $50.00 to Thurber's; $700.00 to the Rutland Hospital; $400.00 to Village Motors and $2,000.00 to Robert Plunkett for a total of $5,675.00.

This loan was approved and was evidenced by a promissory note in the total sum of $6,232.32, which included interest and other charges, and was made payable at the rate of $129.84 monthly beginning May 10, 1979. As security for payment of this note the Debtors executed and delivered to the Plaintiff a security agreement dated April 10, 1979 granting to the Plaintiff a security interest in the 1978 Mercury and promising to obtain a Certificate of Title for said automobile showing the Plaintiff as a lienholder.

The Debtors obtained a check from the Plaintiff for payment of the Mercury, which was purchased by them from Claremont Motors, and they did, at the time of the transfer, take care of the paperwork with a representative of Claremont Motors and failed to have the Plaintiff listed as a lienholder in the application for the Certificate of Title. This Certificate of Title was mailed directly to the Debtors, and they retained possession.

The Debtors defaulted in the monthly payment due on September 10, 1979, and in October, the Plaintiff repossessed the vehicle after being informed that the Debtors were trading it in for a 1979 Mercury and after a representation by the Debtors that they had sold the 1978 Mercury free of any security in favor of the Plaintiff and that they had no intention of paying the loan.

The financial statements submitted by the Debtors to the Plaintiff in support of their applications for the loans of October 25, 1978 and April 10, 1979 were false and they were made with intent to deceive and to induce the Plaintiff to grant the loans.

The applications for these loans were handled by the branch manager of the Plaintiff and it was bank policy, followed in this case, that all applications be in writing, except for collateral loans, that they be reviewed and verified and that they be approved before loans are made. Various factors are considered in approving a loan, such as the income of the applicant, the amount of indebtedness, the payments being made in reduction of such indebtedness, the record of payment, and a complete as well as an accurate financial statement. All of these factors were considered by the Plaintiff through its branch manager in approving the loans to the Debtors and he assumed that the financial statements were complete. He relied on them before disbursing the proceeds of the loans and had he known that the Debtors had obligations of from four to five thousand dollars which were not disclosed he would not have approved the loan.

The Debtors had made regular payments on both loans until they defaulted in September of 1979 on the loan for the 1978 Mercury.

In addition to the financial statements of October 25, 1978 and April 6, 1979 the debtors did submit to the plaintiff written applications for loans with financial statements on March 7, 1978, July 9, 1979 and July 19, 1979 and these also omitted the outstanding obligations which were not included on October 25, 1978 and April 6, 1979.

All of the financial statements submitted to the plaintiff were prepared by the debtors with Linda Norton actually filling them out. On the first one prepared there was some assistance by the branch manager of the plaintiff.

## MEMORANDUM AND CONCLUSIONS

The plaintiff asserts that the debt is not dischargeable on two grounds:

1. The false financial statements submitted by the debtors.

2. Actual fraud by the debtors in obtaining money for the purchase of a 1978 Mercury without having the plaintiff listed as the first lienholder.

■ Under Section 523(a)(2)(B) of the Code which is an expansion of Section 17(a)(2) of the Bankruptcy Act the plaintiff must establish, if the debt is to be held nondischargeable, that the debtors obtained money from the plaintiff by use of a materially false statement in writing respecting their financial condition on which the plaintiff reasonably relied and that the statement was made with intent to deceive.

The evidence is undisputed that the debtors, in support of their applications for loans on October 25, 1978 and April 6, 1978, did submit to the plaintiff written financial statements which omitted several outstanding obligations which aggregated several thousands of dollars. The debtors, however, testified that the statements submitted were not material to the approval of the loans by the plaintiff and they were not made with any intent to deceive. They further testified that the loans had been approved by the branch manager of the bank by telephone prior to the delivery of the written statements to him and that they were only required for the file. On the other hand the branch manager testified that he might have given preliminary approval for the loans by telephone but that it was necessary for him to receive a properly completed application before the loans could be actually made. He withstood searching and vigorous examination by the debtors' attorney. Yet he was firm and consistent in his responses even to the point of testifying that he has never granted a loan and "gotten the paperwork after the fact—I have only, at the very most given a favorable reply—" Tr. 128.

The debtors made at least seven applications for loans to the plaintiff. They followed a consistent pattern of omitting the same outstanding obligations as were excluded in the financial statements of October 25, 1978 and April 6, 1979. These excuse these omissions on the basis of prior approval of the loans. It is difficult to place any credence in such assertions. The debtors are both high school graduates. They are well sophisticated in loan negotiations. An examination of the written applications submitted indicates that they all were made out with a degree of particularity. They even differentiate between secured and unsecured loans. It seems clear that they were fully aware that the plaintiff required complete statements as a basis for consideration of the approval of the loans.

The debtors also carry the burden of inconsistency. In their testimony they pointed out that the debts to Robert Plunkett for $2,000.00 and to Thurber T.V. for $50.00 were disputed (TR 55 and 72), yet their schedules, sworn to by them, list them as "undis."

■ The basis for denial of a discharge under Section 523(a)(2)(B) of the Code is outlined in Collier's 5th Edition § 523.09, pages 523–48–523–63. From this it appears that the written statement must be materially false. In a long line of cases it has been held that the omission, concealment or understatement of liabilities, constitutes a materially false statement. Collier's 15 Ed. 523–51 Note 5 citing cases.

■ Sec. 523 specifically requires that such statement be made with "intent to deceive". However, in point of fact the word "false" imports an intention to deceive. Collier's 15th Ed. 523–60–1 *Matter of Josephson* 229 Fed. 272 (D.C.Or.) 36 Am. B.R. 505. It has also been held that where a debtor made a false statement to a mercantile agency with knowledge that the statement was to be used for credit purposes, his intent to deceive will be presumed. "*In re Simon* (D.C., N.Y.), 29 Am. B.R. 808, 201 Fed. 1004; *Matter of Muscara* (D.C., Pa.), 9 Am.B.R. (N.S.) 276, 18 F.2d 606. See also *Matter of Philpott* (S.D.W. Va.1940) 52 Am.B.R. (N.S.) 19, 37 F.Supp. 43; *Matter of Farrell* (E.D.N.Y.1939) 43 Am.B.R. (N.S.) 804, 30 F.Supp. 88. Where a debtor knowingly makes a false statement, he 'must be held to have intended the natural and necessary consequences of his act.' *In re Stine* (E.D.Mo.1945) 60 F.Supp. 703."

The debtors testified that they did not intend to deceive. Since this testimony is not corroborated it will not overcome natural inferences from the established facts. Colliers 15th Ed. 523–61; *Matter of Rosenfield* (D.C.N.Y.) 1 F.Supp. 924, 22 Am.B.R. (N.S.) 161; *Matter of Monsch* (D.C.Ky.) 18 F.Supp. 913, 34 Am.B.R. (N.S.) 116; *Matter of Eastham* (D.C.Tex.) 51 F.2d 287, 18 Am. B.R. (N.S.) 217.

■ Where a debtor knowingly makes a false statement, he must be held to have intended the natural and necessary consequences of his act. *In Re Stine* (E.D.Mo. 1945) 60 F.Supp. 703.

■ This Court is satisfied that the debtors did, within the purview of Sec. 523(a)(2)(B) of the Code, obtain money from the plaintiff by the use of materially false statements in writing respecting their financial condition on which the plaintiff reasonably relied and these statements were made with intent to deceive the plaintiff.

■ The plaintiff further charges actual fraud by the debtors under Section 523(a)(2)(*A*) of the Code in obtaining money for the purchase of a 1978 Mercury and not having the plaintiff listed as first lienholder on the Certificate of Title. Under this section actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. Fraud implied in law, which may exist without imputation of bad faith or immorality is insufficient to spell out the fraud contemplated by this section. Collier's 15th Ed. Sec. 523.08[5] page 523–47.

■ The evidence in this case clearly establishes that the debtors borrowed the money for the car; that they signed a security agreement granting the plaintiff a security interest in the vehicle; they were fully aware that the bank was to be named as a first lienholder in the certificate of title yet they delivered the proceeds of the loan to the car dealer for the car without carrying out their moral and legal obligation of protecting the bank for the loan. Under 23 V.S.A. 2015 the debtors as owners of the automobile were obligated to make application to the commissioner of motor vehicles for the first certificate of title and furnish him with the names and addresses of any lienholders. They were fully aware of this legal requirement since they had had previous experience in the purchase of automobiles financed by the plaintiff. They testified that they first learned of the absence of the bank as lienholder on the certificate when they received it in the mail. Yet they refused to take steps to correct the mistake and even paid no attention to the demands of the bank for the certificate. They were even taking steps to trade the vehicle free and clear of the security interest of the plaintiff. It is clear that their intentions were far from honorable. The only clear inference is that their conduct constituted actual fraud within the contemplation of Sec. 523(a)(2)(*A*).

The debt of the debtors to the plaintiff is not dischargeable on both grounds advanced by the plaintiff. Judgment should be entered for the plaintiff. The plaintiff has offered no evidence on damages. How-

ever, since the original hearing was continued at the request of the plaintiff, July 25, 1980 at 10:15 A.M., Grand Jury Room, Federal Building, Rutland, Vermont is hereby fixed for the submission of any evidence relating to damages only. After this is received Judgment will be entered.

### SUPPLEMENTAL FINDINGS OF FACT AND MEMORANDUM AS TO DAMAGES

CHARLES J. MARRO, Bankruptcy Judge.

The continued hearing for evidence on damages only was held on July 25, 1980, Grand Jury Room, Federal Building, Rutland, pursuant to notice, with the following appearances:

Glenn S. Morgan, Esquire, for the Plaintiff;

The Debtors and their attorney, Cranston H. Howe, Esq.

Upon the evidence adduced at said hearing and the exhibits received, the following Supplemental Findings are made as to damages:

1. The Debtors are indebted to the Plaintiff on two separate notes with balances of $1,508.67 and $5,084.68 for a total of $6,593.35. As against this total, the Plaintiff paid over to the Trustee to release the vehicle subject to its security interest the sum of $2,000.00 and sold said vehicle for $3,500.00. Therefore, a net credit of $1,500.00 is due the Debtors as against said indebtedness of $6,593.35.

2. The balance due from the Debtors to the Plaintiff is $5,093.35.

3. In addition, under the terms of the notes executed by the Debtors, the Plaintiff is entitled to a reasonable attorney's fee, which this Court finds to be $1,750.00.

4. The grand total due from the Defendants to the Plaintiff is $6,843.35.