In re Cheryl A. MANN a/k/a Cheryl
A. Wayne, Debtor.

WYBRO FEDERAL CREDIT
UNION, Plaintiff,

v.

Cheryl A. MANN a/k/a Cheryl A.
Wayne, Defendant.

Bankruptcy No. 81–01736G.
Adv. No. 82–0667G.

United States Bankruptcy Court,
E. D. Pennsylvania.

Aug. 3, 1982.

Daniel B. Boasberg, Rosenstein & Romano, Norristown, Pa., for plaintiff, Wybro Federal Credit Union.

John A. Wetzel, Wessel & Carpel, Philadelphia, Pa., for debtor/defendant, Cheryl A. Mann a/k/a Cheryl A. Wayne.

Leo F. Doyle, Philadelphia, Pa., Trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The instant case presents two issues. The first is whether the debt owed by the debtor to a credit union is nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code ("the Code") as a debt for obtaining money by the use of a materially false statement in writing about the debtor's financial condition òn which the credit union reasonably relied and which the debtor made with the intent to deceive. We conclude that the debt in question is dischargeable because the credit union failed to sustain its burden of proving that the debtor had the requisite intent to deceive when she prepared the credit application. The second issue is whether the credit union should be held in contempt for continuing to deduct payments from the debtor's paycheck after it had notice that the debtor had filed a petition for relief under the Code. We conclude that the credit union should not be held in contempt because it did not commit any knowing violation of the automatic stay.

**1.** This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

**2.** 11 U.S.C. § 523(a)(2)(B).

The facts of the instant case are as follows:[1] In August, 1979, Cheryl A. Mann ("the debtor") applied for a loan of $5,000.00 from the Wybro Federal Credit Union ("the credit union"). This loan was obtained for the purpose of borrowing $700.00 as well as of refinancing a prior loan of $4,300.00. As part of the credit application, the debtor was asked to list all of her creditors. The debtor listed two creditors to whom she owed a total of $5,423.00 but failed to list a creditor to whom she owed approximately $2,000.00.

Subsequently, on May 5, 1981, the debtor filed a petition for relief under chapter 7 of the Code. Thereafter, the credit union filed the instant complaint seeking a determination that the debt arising from the above loan transaction is nondischargeable pursuant to § 523(a)(2)(B) of the Code. That section provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

. . . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.[2]

The party seeking to have a debt declared nondischargeable has the burden of proving the four elements contained in § 523(a)(2)(B).[3]

**3.** See, e.g., In re Russell, 18 B.R. 325 (Bkrtcy.E.D.Pa.1982); In re Keppel, 14 B.R. 479 (Bkrtcy.E.D.Pa.1981); In re Magnusson, 14 B.R. 662 (Bkrtcy.N.D.N.Y.1981); In re Drewett, 13 B.R. 877 (Bkrtcy.E.D.Pa.1981). See generally, 3

■ In the instant case, we find that the debtor did use a materially false written statement about her financial condition in obtaining the loan from the credit union. The credit application filled out by the debtor called for the disclosure of all of the debts owed by the debtor. However, the debtor admitted that she failed to list a creditor to whom she was substantially indebted. We conclude that the debtor's failure to list that creditor made the application a materially false written statement about her financial condition.[4]

With respect to the third element of § 523(a)(2)(B), we find that the credit union did establish that it reasonably relied on the false statements in the debtor's credit application. Although the chairman of the credit union, who had approved the loan in question, testified that he considered the applicant's salary in deciding whether to approve a loan, he also stated that he considers the total amount of debt owed by the applicant. Therefore, we conclude that the credit union did reasonably rely on the false statements made by the debtor about the debts owed by her.

■ However, we conclude that the evidence presented at the trial herein was insufficient to establish that the debtor had the requisite intent to deceive the credit union when she failed to list one creditor on her application.[5] The debtor testified that she did not list the debt which she owed to the Donahue Funeral Home on her credit application because, at that time, she was not aware that she had any legal obligation to pay that debt. She testified further that, at the time of her mother's death in 1978, she had signed a paper for the Donahue Funeral Home believing that she was signing as a witness to her father's obligation to pay that debt. She stated that she did not discover that she had signed as a principal on the debt to the funeral home until after she had applied for the loan from the credit union.

■ In order for a debt to be determined to be nondischargeable pursuant to § 523(a)(2)(B), the debtor must have made the false statement with the intention and purpose of deceiving the creditor.[6] In the instant case, we find that the debtor lacked the requisite intent to deceive when she applied for the loan in question. Consequently, we conclude that the debt owed to the credit union does not fall within the purview of § 523(a)(2)(B) and is, thus, dischargeable.

In light of our determination that the debt in question is dischargeable, we also find that the debtor is entitled to the costs and reasonable attorney's fees incurred by her in defending the instant complaint.[7] The debtor has requested $500.00 to cover such fees and costs. We do not find that amount to be unreasonable and we will, therefore, allow that amount as part of the judgment herein.

■ With respect to the second issue of whether the credit union is guilty of con-

---

Collier on Bankruptcy ¶ 523.09 at 523–49 (15th ed. 1981).

4. *See, e.g., In re Graham,* 11 B.R. 701 (Bkrtcy. D.Conn.1980); *In re Norton,* 11 B.R. 141 (Bkrtcy.D.Vt.1980).

5. Although the plaintiff has the burden of production of evidence with respect to the first three elements of § 523(a)(2)(B), once it offers evidence of those three elements it has established a prima facie case. This gives rise to a presumption that the debtor had an intent to deceive the credit and requires the debtor to go forward with evidence that he did not have an intent to deceive. However, this shift in the burden of the production of evidence does not shift the burden of persuasion on all of the elements of § 523(a)(2)(B), which burden remains on the plaintiff. *See, e.g., In re Buckwal-*

ter, 18 B.R. 327 (Bkrtcy.E.D.Pa.1982); *In re Barrett,* 2 B.R. 296 (Bkrtcy.E.D.Pa.1980); *In re Tomeo,* 1 B.R. 673 (Bkrtcy.E.D.Pa.1979).

6. *See, e.g., In re McMillan,* 579 F.2d 289, 292 (3d Cir. 1978).

7. Section 523(d) provides:
   (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.
   11 U.S.C. § 523(d).

tempt, we conclude that it is not. In order to find a party in contempt of court, there must be (1) a specific and definite order of the court which that party violated and (2) that party must have had actual knowledge of that order.[8]

■ In the instant case, the automatic stay provisions of the Code provide a specific and definite order which prohibits everyone from, *inter alia,* taking any action "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.[9]" The credit union admitted that it had continued to deduct payments from the debtor's paycheck after the debtor filed her petition for relief on May 5, 1981, thus resulting in a violation of the automatic stay. However, the credit union did not receive notice of the debtor's filing until November 30, 1981, because the debtor had not listed it correctly as a creditor on her schedules.[10] Consequently, the credit union did not knowingly violate the automatic stay before November 30, 1981, and, therefore, cannot be held in contempt for its actions before that date. However, since those deductions were made after the date of the debtor's petition for relief and were in violation of the automatic stay, the credit union will have to repay the debtor for those deductions.[11]

■ With respect to the deductions made by the credit union after November 30, 1981, they were made with knowledge of the automatic stay. However, the credit

union did not apply those payments to its loan; rather, it put those funds into the debtor's share account. As a result, we determine that the action of the credit union after November 30, 1981, was not an action to collect a prepetition debt in violation of § 362(a)(6). Furthermore, since there was no evidence that the credit union took any other actions to restrict the debtor's use of the funds in question, we find that the credit union did not violate any other provisions of the automatic stay. Therefore, we conclude that the credit union should not be held in contempt of court for its action.

---

8. *See Fidelity Mortgage Investors v. Camilia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). *See also, United States v. Christie Industries, Inc.,* 465 F.2d 1002 (3d Cir. 1972); *In re Rubin,* 378 F.2d 104 (3d Cir. 1967).

9. 11 U.S.C. § 362(a)(6). *Cf. Fidelity Mortgage Investors v. Camilia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), holding that the automatic stay provision of Rule 11–44 of the Rules of Bankruptcy Procedure was a "specific and definite" order so as to make a knowing violation of that provision the subject of a contempt order.

10. Rather than listing the credit union as a creditor, the debtor had listed her employer, the Wyath Labs, as a creditor. The debtor

subsequently amended her schedules and notified the credit union on November 30, 1981.

11. In this regard section 549(a) provides:
(a) Except as provided in subsection (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—
(1) that occurs after the commencement of the case; and

(2)(B) that is not authorized under this title or by the court.
11 U.S.C. § 549(a). Section 522(h) allows the debtor to avoid a transfer under § 549(a) if the trustee does not attempt to do so and if the debtor could exempt the property absent such transfer.