In the Matter of Herbert L. BEBAR, Bankrupt.

No. 69–B–74.

United States District Court, E. D. New York.

July 23, 1970.

Levin & Weintraub, New York City, for bankrupt; Elias Mann, New York City, of counsel.

Cullen & Dykman, Brooklyn, N. Y., for objecting creditor Long Island Trust Co.; C. Gayden Wren, New York City, of counsel.

BARTELS, District Judge.

Herbert L. Bebar, the bankrupt, petitions for review of an order of Referee William J. Rudin, dated January 19, 1970, sustaining the objections of the Long Island Trust Company ("Bank"), a creditor, and denying the bankrupt's discharge upon the ground that he obtained credit for a corporation of which he was president by making and publishing a materially false financial statement.

The bankrupt was the president, director and stockholder, and one George B. Newman was the vice president, director and stockholder, of Baronet Confections, Inc. ("Baronet"), a corporation engaged in the business of manufacturing candies and confections; both the bankrupt and Newman together were in sole charge and management of its operations. In September, 1965 the bankrupt obtained a loan from the Bank for Baronet's business, in the amount of $20,000, evidenced by a note of Baronet which was endorsed by the bankrupt and Newman. About the time the loan was made the bankrupt executed a personal financial statement in writing on a form provided by the Bank, which was completed by the bankrupt and returned to an officer of the Bank. When this financial statement was delivered both the bankrupt and Newman were contingently obligated to Refined Syrups & Sugars, Inc. ("Refined") upon a guarantee of a loan made by Refined to Baronet, on which at that time there was due approximately $13,300. The financial statement form provided by the Bank contained the following:

> "Contingent Liabilities ----- As of the date of this financial statement, I had no contingent liabilities, except as follows: Notes Receivable Discounted or Sold $--------- ; Accounts Receivable Assigned or Sold $---------; Co-maker $---------; Accommodation Endorser, Guarantor or Surety $---------; Mortgage Bonds $---------; Leases $---------; Claims for Taxes $---------; Other (describe) :----------."

In the financial statement above quoted the bankrupt failed to fill in the "Contingent Liabilities" blank space and thus omitted to state that he was contingently liable upon a guarantee to Refined on a loan made to Baronet. At the bottom

of this statement, above the bankrupt's signature, there was the following:

"Certification—This is to certify that all the statements contained herein and in any supporting schedules are true and give a correct showing of my financial condition as of the date indicated. I further certify that *I had no liabilities, direct or contingent,* business or accommodation, except as set forth in this statement, and that the title to all assets therein set forth is in my name solely, except as may be otherwise noted."

(Italics supplied.)

Bebar contends that (1) his personal financial statement was received by the Bank on September 13, 1965, after the approval of the loan of $20,000 to Baronet by the Bank's loan committee on September 8, 1965; (2) his personal statement was not relied upon; (3) the omission of the contingent liability from the personal financial statement was unintentional; and (4) in all events, it did not constitute a material misstatement. The Bank contends that the statement was materially false, was received and relied upon by the loan committee prior to the approval of the loan to Baronet on September 8, 1965, and denies the bankrupt's other contentions.

■ Section 14 of the Bankruptcy Act, 11 U.S.C. § 32, provides that

"c. The court shall grant the discharge unless satisfied that the bankrupt * * * (3) while engaged in business * * * as an executive of a corporation, obtained for such business money or property on credit * * * by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition * * *."

and also that

"if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision [c], would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

In applying this statute, the Second Circuit has held that once the objecting creditor has presented a *prima facie* case that a materially false statement was made by the bankrupt and relied upon by the objector, the burden of proving the opposite is shifted to the bankrupt. Industrial Bank of Commerce v. Bissell, 219 F.2d 624 (2d Cir. 1955).

Upon these crucial issues there was a divergence of testimony, which is the basis for the bankrupt's attack upon the Referee's determinations. The bankrupt testified that on a date following the loan committee meeting he telephoned Walter Tindle, an officer of the Bank, concerning his difficulty in filling out the financial statement, and that Tindle told him "Never mind, skip it", and that accordingly this act "was an evidence of good faith on the part of Mr. Newman and myself and that the bank wasn't dependent on this to be accurate." He also maintained that there was no intent on his part to deceive the Bank by the issuance of the financial statement because at the time he was not aware of the contingent liability to Refined, and further, that the omission of the contingent liability from the financial statement did not render it materially false.

The Referee found that the financial statement was delivered to the Bank on September 7, 1965; that the alleged conversation with Walter Tindle never took place; that the testimony of Bebar that he had forgotten the contingent liability was incredible, and that the omission of the contingent liability did render the statement materially false.

■ Since the issues before this court exclusively involve factual determi-

nations and since we cannot overturn the Referee's decision unless we conclude that his findings are "clearly erroneous" (In re Hygrade Envelope Corp., 366 F. 2d 584 (2d Cir. 1966); In re Savarese, 56 F.Supp. 927 (E.D.N.Y.1944)), we must turn to an examination of these findings.

### Bank's Reliance

The Referee's finding that the Bebar financial statement was considered and relied upon by the Bank's loan committee at the September 8th meeting is supported by the testimony of Arthur F. Thompson, an officer of the Bank, who stated that the financial statements of the principals were discussed and considered. This is consistent with the fact that the statement was dated September 7, 1965—one day prior to the loan committee meeting. The Referee's failure to give credence to the contradictory testimony of Bebar who first testified that he delivered the financial statement on or about September 9, 1965 and then retreated from this story stating that he did not deliver it until September 13, 1965, the date he came to the Bank to sign the notes, is fully justified. And although we accept the fact that there was available to the Bank indicia of Baronet's financial condition other than Bebar's financial statement, we fail to see how this negatives the finding that such statement was also available and considered by the Bank.

The testimony of Bebar with respect to the alleged conversation with Walter Tindle is equally deficient in supporting petitioner's contentions. The conversation is urged upon us as further evidence that the financial statement was delivered after the meeting, to show that the Bank as a general rule did not rely on such statements, and conceivably, as a factor going to the issue of the bankrupt's intent. The Referee, however, rejected this self-serving testimony, finding as a matter of fact that the conversation never occurred. Further-

more, the bankrupt's argument that it was incumbent upon the Bank to produce Tindle to refute this testimony is without any legal foundation. As aptly stated by Judge Learned Hand, the demeanor of a witness "may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance, or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies." Dyer v. MacDougall, 201 F.2d 265, 269 (2d Cir. 1952). In the context of this conflicting testimony the Referee resolved the issues of fact against the petitioner and we are in no position to disturb them since great weight "must be accorded in such matters to the findings of the trier of the facts 'who saw and heard the witness' ". In re Melnick, 360 F.2d 918, 920 (2d Cir. 1966).

### The financial statement was materially false.

The other prong of the bankrupt's attack on the Referee's decision to the effect that the Referee failed to give due regard to the bankrupt's testimony that at the time he issued the statement he was not aware of the contingent liability to Refined, need not long detain us. The Referee was not bound to accept this self-serving testimony and the fact that he rejected it does not mean that it was not accorded proper consideration.

While it is true that under Section 14c(3) of the Bankruptcy Act, 11 U.S.C. § 32, the word "false" means more than an incorrect statement, indicating instead that "the statement must have been 'made and acquiesced in either with actual knowledge that it was incorrect, or with reckless indifference to the actual facts, * * * and with no reasonable ground to believe that it was in fact correct' " (Industrial Bank

of Commerce v. Bissell, *supra*, 219 F.2d at 626), it is equally true that one's state of mind can rarely be exposed by direct evidence but instead must be deduced by consideration of the relevant circumstances surrounding the event. In view of the recent nature and the substantial amount of the loan to Refined, the defense of innocent forgetfulness is difficult to believe. In re Farrell, 30 F.Supp. 88 (E.D.N.Y.1939). There was also credible testimony by Bank officers to the effect that the omitted contingent liability would have been a material fact in considering the granting or denial of the loan to Baronet had it been properly disclosed. Weighing all these circumstances, there was more than ample support for the Referee's finding that the omission constituted a materially false statement. See In re Fisch, 180 F.Supp. 45 (E.D. N.Y.1959), affirmed on opinion below sub nom. Fisch v. Krause, 274 F.2d 822 (2d Cir. 1959).

The bankrupt also argues that the failure to include the contingent liability did not render the personal financial statement materially false within the principles set forth in Kansas Federal Credit Union v. Niemeier, 227 F.2d 287, 290 (10th Cir. 1955), and International Harvester Co. of America v. Carlson, 217 F. 736, 739 (8th Cir. 1914). This suggestion is totally without merit. Those cases are clearly distinguishable, in that here we have a positive statement which is false, i. e., that the bankrupt had no contingent liabilities, whereas in those cases there was no such positive statement in the failure to answer the queries posed in the statements. In other words, the failure to fill in the appropriate blank was in the context of this case equivalent to a negative answer.

After careful consideration of the record, we cannot find that the findings of the Referee are erroneous and certainly not clearly erroneous; accordingly the Referee's order must be affirmed.

So ordered.