In re Raphaël Howard WHITEHOUSE, Mary Ann Whitehouse, Robert Bruce Whitehouse, Debtors.

CITIZENS BANK & TRUST COMPANY OF CAMPBELLSVILLE, KENTUCKY, Plaintiff,

v.

Raphael Howard WHITEHOUSE, Mary Ann Whitehouse, Robert Bruce Whitehouse, Defendants.

Bankruptcy Nos. 3–82–00578, 3–82–00579. Adv. No. 3–82–0243.

United States Bankruptcy Court, W.D. Kentucky.

Oct. 21, 1982.

Theodore H. Lavit, Lebanon, Ky., for debtors.

Phil Allan Bertram, Campbellsville, Ky., for plaintiff.

## MEMORANDUM AND ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

This bankruptcy case comes before the Court on complaint of Citizens Bank & Trust Company, a creditor, by counsel, seeking a determination that the debt owing to the creditor by the defendants be deemed nondischargeable on the ground that a loan in the amount of $4125.00 was obtained by the debtors through the use of a false financial statement. The creditor's complaint denotes the ground relied upon as "11 U.S.C. § 523(a)(2)(A)(B)(i)." However, in view of the fact that the evidence presented relates to a false financial statement, the Court will assume for purposes of this opinion that the allegations are founded upon a cause of action under 11 U.S.C. § 523(a)(2)(B).

The matter came on for trial on September 30, 1982, at which time the evidence presented at trial, together with the evidence of record, adduced the following:

## FINDINGS OF FACT

1. The respective bankruptcy petitions of Raphael Whitehouse and Robert Bruce Whitehouse were filed on March 16, 1982.

2. The relationship between the parties developed in the Spring of 1981, at which time defendant Raphael Whitehouse applied for a loan in an undisclosed amount with the plaintiff bank. This loan request was made on behalf of a partnership venture doing business under the name of Whitehouse Jewelers, the partners thereto being Raphael H. Whitehouse, defendant-debtor, and Robert Bruce Whitehouse, defendant-debtor and father of Raphael Whitehouse.

3. On the bankruptcy petitions, the accounts payable of the Whitehouse partnership was listed at approximately $80,000.00.

4. Pursuant to these loan negotiations, the bank requested and received a financial statement dated June 26, 1981, reflecting $34,383.01 of accounts payable (Plaintiff Exhibit # 1).

5. While there is some contradiction as to whether the listing of accounts payable of June 26 was prepared from memory or reference to files, or a combination thereof, it is admitted that little increase occurred in the amount of these accounts between the time of the preparation of the financial statement and the time of the filing of the petitions listing the amount as approximately $80,000.00.

6. At some time after submission of the June 26 statement, and prior to the granting of a loan on August 28, 1981, the bank unilaterally honored an overdraft on the defendants' account in the amount of $3500.00, and in discussing the matter with defendant, the bank agreed to honor several additional checks issued but unpresented in the approximate total amount of $600.00 which were likewise not covered by funds on deposit in debtors' account.

7. The plaintiff caused the execution of a note on August 28, 1981, from the defendants in a sum sufficient to cover the overdraft transactions in the amount of $4125.00. However, plaintiff, through its witnesses, is unable to name the specific bank officer who authorized this extension of credit.

8. The question thus presented is whether the plaintiff in extending credit on August 28, 1981, relied upon the June 26, 1981, financial statement, and whether the amount of the accounts payable listed upon the financial statement was materially false and knowingly and deliberately misrepresented by defendants for the purpose of inducing plaintiff to grant the extension of credit; or whether the $4125.00 note executed on August 28, 1981, was effected solely as a protective measure to cover the dishonored check in the amount of $3500.00 and the additional $600.00 in issued and unpresented checks, with the note and overdraft checks constituting a totally separate and unrelated transaction from that of the Spring, 1981, loan application and negotiations for the purpose of operational funds which related to the use of the June 26, 1981, financial statement.

## CONCLUSIONS OF LAW

1. The established law relating to dischargeability of debts under the Bankruptcy Act of 1938, § 17a(2), 11 U.S.C. § 35(a)(2), has, for the most part, been incorporated as to such cases in 11 U.S.C. § 523(a)(2). See H.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

2. The exceptions set forth in § 17a(2) of the Bankruptcy Act [now § 523(a)(2) of the Bankruptcy Code and in essence works no change upon the former law] are to be strictly and literally construed so as to discharge all debts except those specifically within the exceptions; that "actual fraud" must be established by clear, cogent and convincing evidence. *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir.1940); *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967).

3. Section 523(a)(2)(B) provides that a discharge under Section 727, 1141 or 1328(b) does not discharge an individual debtor from any debt—

   "(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive...." 11 U.S.C. § 523(a)(2)(B).

4. The burden of proof is upon the plaintiff to prove each element as provided under Rule 407, Rules of Bankruptcy Procedure, which states:

"At a trial on a complaint objecting to a discharge, the plaintiff has the burden of providing the facts essential to his objection."

■ 5. The party seeking to have its debt excepted from discharge pursuant to § 523 bears the burden of proof by the fair preponderance of evidence. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

■ 6. Each of the elements of § 523(a) must be proved. Thus, a creditor must prove that the debt was obtained by the use of a statement in writing (1) that is materially false; (2) respecting the debtor's financial condition; (3) on which the creditor reasonably relied in extending money, property, services or credit; (4) that the debtor caused to be made or published with intent to deceive. 3 *Collier on Bankruptcy*, ¶ 523.-09 (15th Ed. 1979).

■ 7. The burden of proof in dischargeability cases involving false financial statements is a federal question governed by federal law. *In Re Barlick*, 1 B.C.D. 412 (D.R.I.1974).

■ 8. That to come within the exception of § 523(a)(2)(B), the statement, to be in writing, must either have been written by the debtor, signed by the debtor, or the particular writing must have been adopted and used by the debtor. See 3 *Collier on Bankruptcy*, ¶ 523.09[1] (15th Ed., 1979), citing *In Re Gonzalez*, 287 F.Supp. 281 (S.D.N.Y.1968).

■ 9. Whether or not a statement is material depends mainly upon whether the complainant relied upon it partially or entirely. Reliance must have been a contributing cause for extension of such credit. *In Re Ellis*, 1 B.C.D. 798 (S.D.N.Y.1975). Partial reliance on the financial statement may suffice. However, the financial statement must be shown to have had such weight in the consideration of the lender that the loan would not have been granted had the lender not relied upon the borrower's representations. *In Re Fetherston*, 1 B.C.D. 1485 (W.D.Wis.1975).

■ 10. It is not sufficient to show that the statement is incorrect in fact. It must be materially false. The omission, concealment or understatement of liabilities constitutes a materially false statement. See generally 3 *Collier on Bankruptcy*, ¶ 523.-09[2] (15th Ed. 1979), citing numerous cases.

■ 11. That debtor's assertion of honest motives and innocent intent, uncorroborated by additional evidence, will not rebut the natural inferences from the admitted facts. *In Re Berk*, 356 F.Supp. 453 (E.D.N.Y.1973).

■ 12. To accept statements of honest motives and innocent intent without additional evidence, clear and convincing in character, would result in affording an easy method of frustrating the purpose of the law. *In Re Monsch*, 18 F.Supp. 913 (E.D. Ky.1937). The Court is not bound to accept self-serving testimony. *In Re Bebar*, 315 F.Supp. 841 (E.D.N.Y.1970).

## MEMORANDUM

■ While it is uncontroverted that an extension of credit was made to the defendants on August 28, 1981, by by plaintiff, there is no testimony or other proof to support a finding that the bank placed any reliance upon the financial statement in making such extension. There is likewise no testimony as to the responsible officer of plaintiff who authorized the credit, and

thus, there is no basis for determining whether there was reliance upon the representation of defendant.

There is some uncertainty as to the actual amount of the accounts payable existing on June 26, 1981; however, there has been no evidence to support a conclusion that the defendant, at the time of the submission of the financial data, knew this figure was incorrect in amount, if in fact it was inaccurate. Therefore, no inference can be drawn that the debtor intended to misrepresent the financial condition or affairs of the partnership.

The bank, by unilaterally honoring defendants' initial overdraft before the execution of the August 28 note, extended credit without the request of defendants, and this fact would further militate toward a finding that plaintiff did not rely upon the financial statement in extending such credit. Further, in large measure, execution of the note merely reduced to express form an acknowledgment by debtors of said indebtedness, which resulted from a distinct and separate transaction.

It is the opinion of the Court, after a thorough review of the pleadings and after having given due weight and consideration to the evidence and credibility of the witnesses at trial, that the plaintiff has failed to sustain its burden of proof, and that the debt is dischargeable under the provisions of 11 U.S.C. § 523(a)(2)(B).

No proof on any of the issues attacking the dischargeability of plaintiff's debts as they relate to Mary Ann Whitehouse was presented, and accordingly all claims as to her be and are dismissed.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, in view of all the foregoing and being otherwise sufficiently advised,

IT IS ORDERED AND ADJUDGED that the debt owing to plaintiff in the amount of $4125.00 be and is dischargeable. This is a final order.