In re John A. KROH, Jr. Debtor.

NORBANK, Plaintiff,

v.

John A. KROH, Jr. Defendant.

Bankruptcy No. 87–00389–1–11.
Adv. No. 87–0407–1–11.

United States Bankruptcy Court,
W.D. Missouri, W.D.

June 13, 1988.
Amended Findings of Fact
June 17, 1988.

Mark G. Stingley, Kansas City, Mo., for plaintiff.

F. Stannard Lentz, Mission, Kan., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

KAREN M. SEE, Bankruptcy Judge.

At trial of this matter on January 12, 1988, plaintiff appeared by counsel Mark Stingley, and defendant appeared by counsel F. Stannard Lentz and Douglas C. Tibble. After considering the evidence, the Court makes the following findings of fact and conclusions of law, based on proposed findings and conclusions submitted by plaintiff. To the extent findings of fact constitute conclusions of law or vice versa, they shall be so construed.

Additionally, pursuant to F.R.Evid. 201(f), the Court takes judicial notice of the Findings of Fact, Conclusions of Law and Judgment, entered by the undersigned on June 13, 1988 in two cases which were consolidated for trial, *Firstate Savings and Loan v. John A. Kroh, Jr.*, Adversary No. 87–0108–1–11 and *Firstate Savings and Loan v. George P. Kroh*, Adversary No. 87–0107–1–11. The decision in those cases shall be made a part of the record in this proceeding, and the findings and conclusions from that decision are adopted herein.

Plaintiff's complaint alleges the debt owed by defendant to plaintiff Norbank is nondischargeable in bankruptcy, pursuant to 11 U.S.C. § 523(a)(2)(B), because it is a debt for a $500,000 loan which was obtained by means of a written financial statement which was materially false and which was made by defendant and given to plaintiff with the intent to deceive, and upon which plaintiff reasonably relied in making the loan.

Defendant filed an answer in which he responded to the allegations in the complaint and did not invoke his Fifth Amendment privilege against self-incrimination. The fact that defendant filed an answer responding to the merits of the complaint is important because defendant elected not to testify, and at the time of trial he filed a motion to stay proceedings alleging that he had "consistently asserted his privilege against self-incrimination." That assertion is incorrect. Upon review of the adversary file and the main file, it is clear that after invoking the Fifth Amendment very early in the main bankruptcy proceedings, defendant then chose to waive his Fifth

Amendment privilege. He filed detailed schedules and statements of affairs, of which the Court now takes judicial notice, and in this adversary action he filed an answer to the complaint and answers to interrogatories. He did not invoke the Fifth Amendment in either answer, but instead provided complete responses. Accordingly, at trial the motion for stay of proceedings was denied.

## FINDINGS OF FACT

1. This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. § 1409.

2. On October 21, 1986, Frank Victor, President of Norbank, received a call from John A. Kroh, Jr. (hereinafter "John"), asking that the Bank consider financing of a loan for him (Exh. 1, pp. 4–5).

3. As a result of the phone discussion, Frank Victor told John he would need to send the Bank a letter requesting the loan and that the letter should be accompanied by financial statements (Exh. 1, pp. 5–6).

4. The letter (Exh. 28) and financial statement (Exh. 29) were delivered hand-delivered by an employee of Kroh Brothers Development Company to Mr. Victor of Norbank prior to a loan committee meeting on October 21, 1986 (Exh. 1, pp. 19–20).

5. After Mr. Victor reviewed the documents, he took the letter and financial statement to the loan committee meeting. The loan committee, after reviewing John's financial statement, agreed to make the loan as requested by John (Exh. 1, p. 7, lines 10–17).

6. The financial statement John presented to Norbank in order to obtain the loan showed total assets of $22,664,000 and bank debt of $3,300,000. These were the figures relied upon by Mr. Victor and Norbank because they felt John had a very strong financial statement with relatively little debt to service.

7. On the date John presented his financial statement to Norbank, the actual amount of debt he was obligated to pay, rather than $3,300,000 as stated in the financial statement, was at least $9,474,-482.47 (counting only principal balances due and not any accrued interest), as itemized on Attachment A to this Order.

8. The financial statement given to Norbank was to be updated by Cheryl Andrews, John's executive secretary. John's financial statements were kept on her computer and any changes that were made were only changes in stock values. There were no changes in the value of John's interest in Kroh Brothers Development Company, the amount of the bank debt, or contingent liabilities (Exh. 32, p. 122, line 23—p. 125, line 16).

9. The financial statement (Exh. 29) was signed by John on October 21, 1986 and represented his statement of his financial position as of October 21, 1986, even though the balance sheet indicates it is a balance sheet as of August 15, 1986.

10. In the financial statement presented to Norbank on October 21, 1986, John showed his assets as $22,664,969.00, while in his Schedules filed in Bankruptcy Case No. 87–00389–1–11, he represented that his assets as of January 29, 1987 were $4,232,-043.14 (Exh. 31). Furthermore, in his bankruptcy schedules John shows deposits of $164,000.00, which is substantially different from the $1,050,000 he shows as cash in the financial statement given to Norbank on October 21, 1986.

11. Frank Victor and the Norbank loan committee took into account the financial statements given to them in making a determination whether they would make the loan to John. In doing so, it was reasonable for them, as bankers, to look at $3,300,000 in debt, compared to $22,664,969 in assets, as a reasonable debt that the borrower could repay. Furthermore, in its calculations the availability of cash for debt service, it was reasonable for Norbank to consider the $1,050,000 in cash John indicated he owned as of October 21. Norbank did take into consideration in making its decision the financial statement and the cash available to repay the amounts due Norbank from John (Exh. 1 p. 12, line 18—p. 13, line 13).

12. Had Norbank been given the correct figures of John's financial position, it

would not have made the loan to John as requested in his October 21 letter. Based on the financial statement and application presented to Norbank, Norbank agreed to make a loan to John that was to be guaranteed by Mary Lou Kroh, his wife. On October 24, after the loan was approved, Mr. Victor of Norbank called John and advised him that the loan had been approved and that Norbank would prepare the proper documents. John replied that he would send a messenger over to pick them up, which he did. After the documents were executed, they were returned to Norbank and at that time, the loan to John was funded (Exh. 1, p. 9, line 11–21).

13. On October 24, 1986, the loan was funded in the form of a cashier's check which was delivered to John by the same messenger that brought the executed documents to Norbank (Exh. 1, p. 10, line 16—p. 11, line 6. Also see Exhs. 30, 33 and 34).

14. John did not pay any amounts due on the promissory note to Norbank. Accordingly, he is indebted to Norbank in the principal amount of $500,000, plus accrued interest at the rate of 1.5% per annum over the Norbank prime rate.

15. Although the loan application contained in the October 21 letter (Exh. 28) represented that the funds were to be used by John for the Hallbrook Farms project, the borrowed funds were actually used to pay Kroh Brothers Development Company obligations. At the time John borrowed the $500,000 from Norbank, Kroh Brothers Development Company was in a cash poor condition and John was borrowing funds to use for Kroh Brothers Development Company to pay its obligations (See deposition of Jacob Mondschein, Exh. 27, p. 20, line 3—p. 31, line 5).

16. John engaged in a deliberate scheme to obtain loans from Norbank and other lenders by presenting to the lenders financial statements with material fraudulent misrepresentations as to his assets and liabilities, with the intent that the lenders, in reliance on those fraudulent financial statements, would make loans to John.

This scheme is clearly shown by the large number of loans John procured for himself and his brother, George P. Kroh, in a relatively short period of time during 1986, as described in the evidence in this case and in the two cases of which the Court has taken judicial notice, *Firstate Savings and Loan v. John A. Kroh, Jr.*, and *Firstate Savings and Loan v. George P. Kroh.*

17. At trial, John's attorney agreed that if the debt to Norbank was found to be nondischargeable, judgment could be rendered in favor of Norbank for the amount owed by John.

## CONCLUSIONS OF LAW

■ 18. The elements which plaintiff must establish under 11 U.S.C. § 523(a)(2)(B) are: (1) a debt for money, or an extension, renewal or refinancing of credit, obtained by (2) defendant's use of a statement in writing, (3) that is materially false, (4) respecting debtor's or an insider's financial condition; (5) on which statement plaintiff reasonably relied, and (6) which statement debtor caused to be made or published with intent to deceive. Plaintiff has established these elements by clear and convincing evidence.

19. Norbank reasonably relied on the financial statement and John's letter of October 21, 1986 in making its decision to loan money to John. The financial statement dated October 21, 1986, given to Norbank by John, was materially false and was made and published with the intent to deceive Norbank both as to the amount of assets, the amount of liabilities, and the use of the loan proceeds.

■ 20. The financial statement in question must be in writing and have either been written by the debtor, signed by the debtor, or adopted and used by the debtor. *In re Whitehouse*, 26 B.R. 239 (Bankr.W.D. Ky.1982). John's signing of the financial statement on October 21, 1986 indicated his intention that the August 15 financial statement be presented to reflect his financial condition as of October 21.[1]

1. Even assuming that John intended the financial statement to reflect his assets and liabilities

▉ 21. The omission, concealment and understatement of John's liabilities constitutes a materially false statement. *In re Whitehouse*, 26 B.R. at 242[7]; *In re Bebar*, 315 F.Supp. 841, 845[8] (E.D.N.Y. 1970). A finding of material falsity in a financial statement can be based on omission of information about a debtor's financial condition. *In re Anzman*, 73 B.R. 156, 163[5] (Bankr.D.Colo.1986).

▉ 22. The element of publication with the intent to deceive can be inferred from John's false representations. Furthermore, the requisite intent to deceive can also be found in the fact that John had seen the financial statement and the errors and omissions were of a type and of such a substantial degree that he knew or should have known of the statement's materially false representations. See *In re Coughlin*, 27 B.R. 632, 636[7] (Bankr.Mass.1982). Intent to deceive can be established by the reckless indifference and reckless disregard of the accuracy of the information in the financial statement. *Id.*

▉ 23. Norbank reasonably relied on the financial statement. Reasonable reliance on a financial statement can be shown if the statement was a contributory cause of the extension of credit. See *In re Coughlin*, 27 B.R. at 637 (Bankr.E.D.Pa. 1981). Reasonable reliance can also be demonstrated by showing that credit would not have been extended had accurate information been provided. 27 B.R. at 636[9]. If correct financial information had been presented, Norbank would not have made the loan.

▉ 24. Norbank's reliance on the financial statement was reasonable even though Norbank made no independent investigation of the matters stated in the financial statement. *Earls v. Southgate Bank and Trust Co. (Matter of Earls)*, 80 B.R. 978 (W.D.Mo.1987), a recent case on point from the Western District of Missouri, held that a lender was not required to verify the accuracy of the potential bor-

rower's financial statement. To require the lender to verify the accuracy of statements in a financial statement provided in connection with a loan application places on the lender the unfair burden of presuming that every borrower who provides a financial statement is dishonest. Furthermore, in this particular instance it would have been extremely difficult for Norbank to discover undisclosed loans from a multitude of other lending institutions. *See e.g., Matter of Garman*, 643 F.2d 1252, 1259–1260 (7th Cir.1980); *In re Mutschler*, 45 B.R. 482, 493 (D.N.D.1984); *In re Vairo*, 40 B.R. 776, 781 (Bankr.S.D.N.Y.1984). Finally, the use of and reliance on financial statements dated within three months of the date of a request for a loan is reasonable because a financial statement may have continuing effect over a period of time so as to warrant reliance by a creditor. *In re Crockett*, 11 B.R. 822, 827 (Bankr.D.Va.1981).

25. The debt of John A. Kroh, Jr. to Norbank was incurred as a result of materially false representations, intentionally made by John A. Kroh, Jr. in a financial statement which was presented to Norbank in order to obtain a $500,000.00 loan. The debt is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(B). Judgment should be entered against defendant and in favor of plaintiff for $500,000.00 plus accrued prejudgment interest at the rate of 1.5% per annum over Norbank's prime rate.

▉ 26. Norbank also requested a judgment for attorney fees because its promissory note provides for reasonable fees if the note was placed in the hands of an attorney for collection. However, no evidence was presented as to what constituted reasonable fees, so no award of attorney fees is made.

Accordingly, for the foregoing reasons, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

as of August 15, a date more than three months past, the August balance sheet still presented material false representations. According to the list of notes on Attachment A to this Order, as of

August 15 there were notes in excess of $5.3 which is $2 million more than the $3.3 million represented in the financial statement.

1. Judgment is entered in favor of plaintiff and against defendant John A. Kroh, Jr. for $500,000.00, plus prejudgment interest and costs. The judgment is excepted from discharge and declared nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(B).

2. Plaintiff is directed to file, within five days, a statement of the prejudgment interest due, calculated at 1.5% per annum over Norbank's prime rate, as provided in the promissory note, at which time an amended judgment will be entered.

## ATTACHMENT A

| Exhibit Number | Name of Bank | Date of Note | Principal Due |
|---|---|---|---|
| 3 p. 3 line 20– p. 4 line 14 | Security Bank & Trust of Branson | 3/28/86 | 500,000.00 |
| | | 10/23/86 purchased participation of $200,000 Note of Union Bank | 100,000.00 |
| 4 p. 3 line 17– p. 4 line 12 | The Mission Bank | 4/27/84 renewed last on 10/6/86 | 300,000.00 |
| 5 p. 3 line 19– p. 4 line 11 | Mark Twain Bank | 5/27/86 | 225,000.00 |
| 6 p. 3 line 19– p. 4, line 13 | Southgate | 9/30/86 | 675,000.00 |
| 7 p. 3 line 19– p. 7 line 15 | Commerce Bank | 6/1/83 | 23,637.14 |
| | | 7/10/85 renewed 10/10/86 | 60,366.65 |
| 8 p. 3 line 20– p. 4 line 13 | Centerre Bank | 6/30/86 | 250,000.00 |
| 9 p. 3 line 19– p. 4 line 13 | Central Bank of Kansas City | 10/30/85 renewed 7/28/86 | 250,000.00 |
| 10 p. 3 line 20– p. 4 line 13 | Citizens Bank of Ava | 8/84 | 250,000.00 |
| | | 8/13/86 | 307,000.00 |
| 11 p. 3 line 18– p. 4 line 11 | Citizens Bank & Trust | 5/28/85 | 46,778.50 |
| 12 p. 3 line 19– p. 5 line 9 | College Blvd. National Bank | 7/23/85 | 150,000.00 |
| | | 5/9/86 | 66,149.25 |
| | | 2/4/86 | 100,000.00 |
| 13 p. 3 line 20– p. 4 line 15 | Country Club Bank | 10/23/85 | 300,000.00 |
| | | 9/22/86 | 1,000,000.00 |
| 14 p. 3 line 19– p. 4 line 11 | First Continental Bank & Trust | 1/21/86 | 275,000.00 |
| 15 p. 3 line 18– p. 4 line 11 | 1st National Bank of Columbus | 6/6/85 and 7/2/86 | 300,000.00 |

| Exhibit Number | Name of Bank | Date of Note | Principal Due |
|---|---|---|---|
| 16 p. 3 line 18– p. 5 line 2 | American Bank | 8/22/83 | 800,000.00 |
| 17 p. 3 line 21– p. 4 line 20 | Bank of Grain Valley | 8/28/86 | 50,000.00 |
| | | 10/24/85 | 100,000.00 |
| 18 p. 3 line 18– p. 4 line 15 | Boatmen's 1st National Bank | 4/21/86 | 750,000.00 |
| | | 10/9/86 (Joint with George P. Kroh) | 500,000.00 |
| 19 p. 3 line 23– p. 4 line 23 | Capital City Bank & Trust | 8/28/86 | 400,000.00 |
| 20 p. 3 line 18– p. 4 line 20 | Capital Federal Savings & Loan | 5/6/77 | *116,450.93 *as of 1/29/87 |
| 21 p. 3 line 19– p. 4 line 10 | Kansas National Bank & Trust Co. | 10/23/86 | 250,000.00 |
| 22 p. 3 line 19 p. 4 line 17 | Johnson County Bank | 4/27/84 | 350,000.00 |
| 23 p. 3 line 3– line 25 | Southwest Bank of Omaha | 5/22/86 | 250,000.00 |
| 24 p. 3 line 15– p. 4 line 8 | State Bank of Stanley | 10/21/82 | 200,000.00 |
| 25 p. 3 line 18 p. 4 line 16 | Security Bank & Trust | 1/5/84 | 130,000.00 |
| | | 10/23/86 | 200,100.00 |
| 26 p. 3 line 18 p. 4 line 21 | 1st National Bank of Shawnee Mission | Date prior to renewal of 12/1/86 not given | 200,000.00 |
| | | TOTAL | $9,475,482.47 |

## AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

In the original Order and Judgment, entered June 13, 1988, plaintiff was directed to submit a statement of prejudgment interest accrued on the promissory note, whereupon the judgment would be amended. Plaintiff's statement was filed June 16, 1988, indicating accrued prejudgment interest of $80,989.60 through June 13, 1988, the date of judgment. Interest was calculated, as provided in the note, at 1.5% over Norbank's prime rate. Accordingly, the findings of fact and judgment are amended as stated herein. In all other respects the original Order, Findings of Fact, Conclusions of Law and Judgment, entered June 13, 1988, remain effective. For the foregoing reasons, it is

ORDERED, ADJUDGED AND DECREED as follows:

1. Judgment is entered in favor of plaintiff and against defendant John A. Kroh, Jr. for $500,000.00, plus prejudgment interest of $80,989.60, costs, and post-judgment interest at the rate set forth in the promissory note, as provided by law.

2. The judgment is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(B).